IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COPLAY AGGREGATES, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BAYSHORE SOIL MANAGEMENT LLC, | : | No. 11-1059 |
| Defendant. | : | |

MEMORANDUM

Schiller, J.                                                                                                          May 23, 2011

Plaintiff Coplay Aggregates, Inc. ("Coplay") alleges that Defendant Bayshore Soil Management, LLC ("Bayshore") breached a contract regarding payment arrangements for an underlying agreement permitting Bayshore to dump waste at Coplay's facility. Coplay also brings claims for unjust enrichment, breach of the duty of good faith and fair dealing, breach of fiduciary duty, and injunctive relief. Currently before the Court is Bayshore's motion to dismiss for lack of personal jurisdiction and failure to state a claim. For the reasons that follow, the Court finds that it may exercise personal jurisdiction over Bayshore but dismisses Coplay's claims for breach of the duty of good faith and fair dealing, breach of fiduciary duty, and injunctive relief.

I. BACKGROUND

In September of 2009, Coplay and Bayshore entered into an arrangement for Bayshore to deposit waste soil at a quarry Coplay owns in Whitehall, Pennslyvania. (Am. Compl. ¶¶ 3, 10.) Coplay is a Pennsylvania corporation with its principal place of business in Orefield, Pennsylvania. (*Id.* ¶ 1.) Bayshore is a New Jersey limited liability company with its principal place of business in Keasbey, New Jersey. (*Id.* ¶ 2.) Corson Technologies, Inc. ("CST"), a non-party, brokered the

arrangement, whereby Bayshore agreed to pay CST $9 per ton of waste dumped at the quarry. Coplay and CST separately agreed that CST would remit $6 per ton to Coplay, keeping the remaining $3 per ton as commission. (*Id.* ¶ 15.) Later in September of 2009, Bayshore began transporting its waste soil from a treatment facility in Keasbey, New Jersey to Coplay's quarry. Soon thereafter, CST became delinquent in making payments to Coplay. (*Id.* ¶ 23.) As a result, Steve Kolbe, Coplay's president, advised CST that Coplay would not accept any further deliveries unless payment arragements were modified to ensure Coplay would receive its fees. (Pl.'s Opp'n to Def.'s Mot. to Dismiss Ex. A [Kolbe Aff.] ¶ 13.)

On September 28, 2009, Jim Sanford of CST sent an e-mail to Kolbe and Al Ludwig of Bayshore directing that future payments should be payable to Coplay and CST jointly. (Am. Compl. Ex. B [Sanford e-mail dated Sept. 28, 2009].) On September 30, 2009, Kolbe sent an e-mail to Ludwig and Sanford requesting confirmation. (*Id.* Ex. B [Kolbe e-mail dated Sept. 30, 2009].) Later on September 30, Ludwig responded to Kolbe and Sanford that he agreed to the arrangement. (*Id.* Ex. B [Ludwig e-mail dated Sept. 30, 2009].)

Under this arrangement, Bayshore could continue depositing waste soil at the quarry at $9 per ton; Coplay was to send invoices for waste deposits to CST, and then Bayshore was to issue a check to CST and Coplay jointly. (Am. Compl. ¶ 26.) Coplay was then to endorse the check, deposit the funds in its bank account, and then wire CST its share. (*Id.*) However, CST deposited the first check issued under the new arrangement without Coplay's knowledge or consent. (*Id.* ¶ 31.) On October 19, 2009, Donna Pantaleo of CST e-mailed Ludwig, Sanford, and Kolbe requesting that Bayshore issue joint checks. (Am. Compl. Ex. C [Pantaleo e-mail dated Oct. 16, 2009].) Ludwig responded that Bayshore would issue joint checks. (*Id.* Ex. C [Ludwig e-mail dated Oct. 19, 2009].)

Between September 8, 2009 and September 27, 2010, Bayshore deposited 115,407.23 tons of waste at the quarry. (Am. Comp. ¶ 41.) During this period, Bayshore issued over twenty checks payable to Coplay and CST jointly, totaling over $350,000. (*Id.* ¶ 43; Ex. E [Joint Checks].) In October of 2010, without notice to Coplay, Bayshore ceased issuing joint checks and began to issue checks solely to CST. (Am. Comp. ¶ 46.) Bayshore has paid at least $71,000 of this sum solely to CST in violation of the modified payment arrangement. (*Id.* ¶ 66.)

In November of 2010, the parties orally modified the underlying waste disposal agreement, and Bayshore agreed to remit monies due Coplay. (*Id.* ¶ 68.) Despite Coplays's repeated demands, Bayshore has refused to pay Coplay over $100,000 in connection with waste deposited at the quarry between August 2010 and September 2010. (*Id.* ¶ 75.)

## II. STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Rule 12(b)(2) provides for dismissal for lack of personal jurisdiction. The plaintiff bears the burden of demonstrating facts that establish personal jurisdiction when a defendant raises this defense. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). The plaintiff's factual allegations are taken as true and all factual disputes are drawn in the plaintiff's favor for the purpose of this analysis. *Id*. Establishing a prima facie case for the exercise of personal jurisdiction requires the plaintiff to demonstrate "with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank East (PSFS) Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). The plaintiff must offer "sworn affidavits or other competent evidence" and may not "rely on the bare pleadings alone" in its effort to withstand the defendant's motion. *Patterson v. FBI*, 893

F.2d 595, 604 (3d Cir. 1990). If the plaintiff meets this burden, the defendant must establish the presence of other considerations that would render jurisdiction unreasonable to prevail on its motion. *Brown & Brown, Inc. v. Cola*, Civ. A. No. 10-3898, 2010 WL 3928589, at *6 (E.D. Pa. Oct. 4, 2010) (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992)).

B. **Motion to Dismiss for Failure to State a Claim**

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers and Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Simply reciting the elements will not suffice. *Id*. (concluding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must then make a common-sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id*. at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id*.

When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). A district court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### III. DISCUSSION

#### A. Personal Jurisdiction

Federal district courts exercise personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the court sits. Fed. R. Civ. P. 4(e); *Mellon Bank*, 960 F.2d at 1221. Pennsylvania law provides for long-arm jurisdiction to the constitutional limits of the Due Process Clause of the Fourteenth Amendment under 42 Pa. Cons. Stat. § 5322(b). *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998).

5

Where, as in this case, a plaintiff's claim "is related to or arises out of the defendant's contacts with the forum, the court is said to exercise specific jurisdiction." *Imo Inds., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Courts conduct a three-part analysis to determine whether specific jurisdiction exists, examining: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of those activities; and (3) if the first two requirements are met, whether the exercise of jurisdiction would comport with "fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

        1.    *Bayshore has purposely availed itself of the privilege of conducting activities in Pennsylvania.*

To analyze personal jurisdiction over a breach of contract claim, the Court must consider "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *See Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). The existence of a contract "does not automatically establish sufficient minimum contacts" with the forum. *See Grand Entm't Grp. v. Star Med. Sales*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Burger King*, 471 U.S. at 478). Rather, the Court must consider the totality of the circumstances. *See Telcordia Tech, Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006). Physical presence in the forum is not required, so long as the defendant "purposefully availed himself of the privilege of conducting activities within the forum." *O'Connor*, 496 F.3d at 317 (quoting *Hanson v. Deckla*, 357 U.S. 235, 253 (1958)).

Courts consider a variety of factors in determining specific jurisdiction with respect to a

breach of contract claim, including "the location and character of the contract negotiations, whether the non-resident solicited business from the forum state, whether the non-resident invoked and received benefits under the law of the forum state, the contemplated future consequences of the contract, the terms . . . of the contract, and the parties' course of dealing." *Rychel v. Yates*, Civ. A. No. 09-1514, 2011 WL 1363751, at *12 (W.D. Pa. Apr. 11, 2011) (collecting cases).

Accepting Coplay's allegations as true, the modified payment arrangement contemplated transporting waste from New Jersey into Pennsylvania. Although the parties entered into the contract electronically, the Amended Complaint and Kolbe's Affidavit allege that Bayshore arranged for the dumping of tens of thousands of tons of waste in Pennsylvania *after* the consummation of the modified payment agreement. (Am. Compl. ¶ 41; Kolbe Aff. ¶ 17.) The Court determines that Bayshore purposefully availed itself of the privileges of conducting business in this state. *Compare Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.,* 75 F.3d 147, 152 (3d Cir. 1996) (holding there was no jurisdiction when the only contacts with the forum were telephone calls and letters) *with Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 700 (3d Cir. 1990) (holding there was jurisdiction when after selling a boat to New Jersey buyer, the defendant sent written correspondence to New Jersey, delivered the boat to New Jersey, and attempted to repair the boat in New Jersey).

    2.    *Coplay's claims arise out of Bayshore's contacts with Pennsylvania.*

Coplay must demonstrate that its breach of contract claim arises out of or relates to at least one of Bayshore's contacts with Pennsylvania in order to obtain specific jurisdiction. *O'Connor,* 496 F.3d at 318. The Third Circuit requires only a causal connection that, while "somewhat looser than the tort concept of proximate causation . . . must nonetheless be intimate enough to keep the [jurisdictional] quid pro quo proportional and personal jurisdiction reasonably foreseeable." *Id.* at

323. Coplay's claims allege that Bayshore breached the modified payment agreement and an oral modification to the underlying waste disposal agreement, both of which involved the transportation of waste into this state. Coplay has thus established that its claims arise out of Bayshore's contacts with Pennsylvania.

### 3. *Exercising jurisdiction comports with fair play and substantial justice.*

When evaluating whether the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice," courts should consider several factors, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *O'Connor*, 496 F. 3d at 324 (quoting *Burger King*, 471 U.S. at 477). A court's finding that minimum contacts exist makes jurisdiction "presumptively constitutional." *Id.*; *see Grand Entm't Grp.*, 988 F.2d at 476.

These factors weigh in favor of litigating this dispute in Pennsylvania. Litigating in Pennsylvania will impose little burden on a New Jersey defendant, and Pennsylvania has a "manifest interest in providing effective means of redress" to its citizens. *See O'Connor*, 496 F.3d at 325 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). A Pennsylvania plaintiff has an obvious interest in litigating here. Regarding efficiency, Bayshore stresses that because Coplay and CST are already involved in related litigation in state court in New Jersey, litigating there would avoid duplicative litigation. However, dismissing this action would presumably result in a separate federal lawsuit filed in the District of New Jersey. Bayshore's efficiency argument is specious.

Accordingly, the Court finds that "this is not one of those rare or compelling cases where jurisdiction would be unreasonable despite the presence of minimum contacts." *See O'Connor*, 496

F. 3d at 325 (internal quotation marks omitted).

    4.    *There is personal jurisdiction with respect to the other claims*.

As discussed below, unjust enrichment is Coplay's only other viable claim. The unjust enrichment claim makes very similar factual allegations to Coplay's breach of contract claim. Accordingly, the Court may also retain jurisdiction with respect to the unjust enrichment claim. *See O'Connor*, 496 F.3d at 324 (holding that there was personal jurisdiction with respect to a tort claim arising out of a contractual obligation in the forum because "it is enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiffs' claims.").

    **B.**    **Breach of Contract**

Coplay alleges that Bayshore breached the modified payment contract and a subsequent oral modification to the waste disposal agreement for Bayshore to pay Coplay outstanding fees. The parties agreed at oral argument that Pennsylvania law applies to Plaintiff's claims. For an agreement to be enforceable in Pennsylvania, a plaintiff must show that: (1) the parties have manifested an intention to be bound by the agreement's terms; (2) the terms of the agreement are sufficiently definite to be specifically enforced; and (3) consideration was present. *See Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298-99 (3d Cir. 1986).

Bayshore argues that the e-mail exchange between the parties regarding the modified payment arrangement cannot constitute a contract because the communications were premised upon "an agreement between Bayshore and *CST*, or, even more accurately, instructions from *CST* to issue joint checks." (Bayshore's Mot. to Dismiss 15.) Bayshore also notes that "all arrangements with Bayshore were effectuated through the only party with whom it had a contract – CST. Coplay therefore has not pled direct contract between it and Bayshore, and as such cannot survive a motion

9

to dismiss." (*Id.*) To the contrary, Coplay has alleged multiple direct contacts with Bayshore, including contracting with Bayshore to modify payment terms and orally modifying the waste disposal agreement. (Am. Compl. ¶¶ 32-35, 68-70.)

Furthermore, the e-mails reveal that Coplay has plausibly alleged a joint check contract with Bayshore. The September 28 e-mail from Sanford at CST to Ludwig at Bayshore and Kolbe at Coplay reads:

> Al[Ludwig],
> As per our recent conversation regarding CST #9080; as agreed all material approved and accepted into Coplay Quarry for disposition under project #9080 will have special payment terms and conditions. Effective immediately all payments made on the billable tonnage under project #9080 should be payable as follows:
> Payee: CS Technologies/Coplay Aggregate, Inc.
> Terms: Net 30 days
> Rate: $9.00/ton.

(Sanford e-mail dated Sept. 28, 2009.) Kolbe responded, "Al, I was copied on the 9/28/09 email sent to you by Jim Sanford . . . . Would you please confirm that you are in agreement with Jim Sanford's request for joint checks?" (Kolbe e-mail dated Sept. 30, 2009.) Later on September 30, Ludwig responded to Kolbe and Sanford, "I am in agreement with a joint check." (Ludwig e-mail dated Sept. 30, 2009.) On October 30, 2009, after there was an apparent misunderstanding regarding the arrangement, Pantaleo of CST wrote to Ludwig, Sanford, and Kolbe, "It is my understanding that there was an agreement between Jim Sanford of CST and Al Ludwig of Bayshore that all payments for disposal into Coplay Quarry should be issued as joint checks." Pantaleo requested that Ludwig confirm with Bayshore's accounting department that checks were made out to "CS Technologies and Coplay Aggregate, Inc." (Pantaleo e-mail dated Oct. 16, 2009.) After Kolbe requested confirmation, Ludwig responded, "Steve [of Coplay], we are sending joint checks as agreed." (Ludwig e-mail

10

dated Sept. 30, 2009).

Despite Bayshore's contention that the e-mail exchange reflects an agreement with CST only, the Court notes that Ludwig's e-mail assenting to issue joint checks was sent to Kolbe as well as Sanford at CST. For purposes of this motion, Ludwig's September 30, 2009 e-mail concedes the existence of a joint check agreement. Because Bayshore has not argued lack of consideration, the Court concludes that Coplay has satisfied the first and third elements of its prima facie case.

Next, Bayshore argues that even if the joint check arrangement was otherwise a contract, it would fail for indefiniteness. "An enforceable contract requires, among other things, that the terms of the bargain be set forth with sufficient clarity." *Lackner v. Glosser*, 892 A.2d 21, 30–31 (Pa. Super. Ct. 2006) (citing *Biddle v. Johnsonbaugh*, 664 A.2d 159 (Pa. Super. Ct. 1995)). "An agreement is expressed with sufficient clarity if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy." *Helpin v. Trs. of the Univ. of Pa.*, 969 A.2d 601, 610-11 (Pa. Super. Ct. 2009) (internal quotation marks omitted.)

Here, the e-mails exchanged between Coplay, CST, and Bayshore contain sufficiently specific terms for Coplay to satisfy the second element of its breach of contract claim. The correspondence sets forth how payment is to be made, when it was due, and the rate per ton to be paid. Although the e-mail setting forth these terms came from CST, the Court concludes that Ludwig's September 30 e-mail to Bayshore that "we are sending joint checks as agreed" reflects Bayshore's assent to these terms. It is thus premature to dismiss Coplay's breach of contract claim for lack of specificity.

### C. Breach of the Duty of Good Faith and Fair Dealing

The Amended Complaint alleges a breach of the duty of good faith and fair dealing in

connection with Bayshore's alleged noncompliance with the modified payment arrangement. Under Pennsylvania law, "there is no free-standing claim for breach of good faith. Rather, in order to plead a cause of action for breach of the covenant of good faith . . . , a plaintiff must properly plead the elements of . . . breach of contract." *Pro Acoustics, LLP v. Korn*, Civ. A. No. 09-1076, 2010 WL 3370849, at *3 (E.D. Pa. Aug. 24, 2010) (quoting *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp.2d 354, 369 (E.D. Pa. 2009). Coplay has adequately pled its breach of contract claim. Its independent claim for breach of good faith will be dismissed.

### D. Unjust Enrichment

Coplay alleges that Bayshore was unjustly enriched by accepting the benefits of dumping its waste in the quarry without paying Coplay. Bayshore contends that it could not have been unjustly enriched because it has already paid CST the sum allegedly due.

Under Pennsylvania law, the elements of unjust enrichment are: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008). Coplay pleads this claim in the alternative to its contract claim. Despite Coplay's assertion that it has already paid CST the amount due, Coplay alleges that they were not paid and that Bayshore received the benefit of dumping waste at the quarry. Coplay has plausibly alleged its unjust enrichment claim.

### E. Breach of Fiduciary Duty

Coplay alleges that "[w]hen Defendant entered into the Modified Payment Arrangement with Plaintiff and CST, it owed a fiduciary duty to Plaintiff with respect to the payment of invoices for

Waste Soil deposited by Defendant . . . ." (Am. Compl. ¶ 88.) According to Coplay, Bayshore breached this duty when it failed to pay Coplay its share of the dumping fees. (*Id.* ¶ 91.) Bayshore argues that Coplay has not adequately alleged that Bayshore was a fiduciary. Bayshore is correct.

To state a claim for breach of fiduciary duty under Pennsylvania law, a plaintiff must show that a fiduciary relationship existed between the parties. *See Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1119-22 (Pa. 2000). A fiduciary duty exists when there is a "special relationship" between the parties, which is one "involving confidentiality, the repose of special trust or fiduciary responsibilities." *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414-15 (E.D. Pa. 2006). Such a relationship "generally involves a situation where by virtue of the respective strength and weaknesses of the parties, one has the power to take advantage of or exercise undue influence over the other." *Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*, Civ. A No. 06-5165, 2009 WL 2526436, at *4 (E.D. Pa. Aug. 12, 2009). Here, Coplay states that the parties were not on equal footing with respect to the modified payment arrangement because "Coplay was dependant on Defendant to act in accordance with the agreement . . . ." (Pl.'s Opp'n to Def.'s Mot. to Dismiss 18.)

With all contracts, the parties depend on one another to perform; this does not suggest that one has the power to take advantage of the other. A fiduciary relationship does not arise from ordinary, arm's length commercial transactions. *See Siematic Mobelwerke*, 2009 WL 2526436, at *4. Accordingly, Coplay's claim for breach of fiduciary duty will be dismissed.

### F.     Injunctive Relief

Count Five of the Amended Complaint, captioned "injunctive relief," is styled as a request for a preliminary injunction. Coplay requests that the Court enjoin Bayshore from "making any further disbursements of funds from any or all of its bank accounts containing the $121,396.12 due

and owing," and directing Bayshore to deposit this sum into an escrow account. (Am. Compl. 17.) This request is meritless.

A preliminary injunction may be issued where the party seeking such relief demonstrates: (1) a likelihood of success on the merits; (2) irreparable harm if the injunction is denied; (3) that granting relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010). Other than a conclusory assertion that Bayshore may disburse funds to third parties, Coplay has alleged no facts demonstrating that it will suffer irreparable harm. Accordingly, Count Five will be dismissed. *See Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.,* 847 F.2d 100, 102 (3d Cir. 1988) ("The availability of adequate money damages belies a claim of irreparable injury.").

## IV.　CONCLUSION

For the reasons stated above, Bayshore is subject to personal jurisdiction in Pennsylvania. Having retained jurisdiction, the Court will dismiss Bayshore's breach of fiduciary duty, breach of the duty of good faith and fair dealing, and injunctive relief claims. An appropriate Order will issue separately.